# Sheetz's Appeal.

1. The right of an executor to costs in an issue devisavit vel non, depends on the question whether the litigation is for the benefit of those entitled to the estate.

2. A decedent having died, his friend and legal adviser produced a paper purporting to be the decedent's will, whereby a large charitable institution was founded and A. appointed executor. His widow and heirs contested the will, and A., acting in perfect good faith, undertook to support it. An issue being framed, A. retained counsel and subpœnaed witnesses; but after a protracted litigation a verdict was rendered to the

effect that the pretended will was a forgery. Letters testamentary were thereupon issued to the executors named in the real will of the decedent. Upon the filing of the account of said executors, A. claimed the counsel fees and witness fees expended by him in attempting to support the forged will. *Held,* that this claim should be disallowed.

March 27th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Philadelphia county :* Of January Term 1882, No. 55.

This was an appeal by Daniel Sheetz from a decree of the said court, overruling exceptions filed by him to the adjudication of the judge auditing the account of William Overington and Edward J. Robinson, executors of the last will and testament of Robert Whitaker, deceased.

The facts of the case, as they appeared on the audit, before ASHMAN, J., were as follows :

Robert Whitaker died August 23d 1878. On the 12th day of September 1878, Wm. R. Dickerson presented to the register of wills for probate, a paper writing said to be the last will and testament of the said Robert Whitaker, deceased, bearing date May 7th 1878. A caveat was filed by the heirs against probating said will. Daniel Sheetz, being one of the executors named in said will, called witnesses to prove the execution of said will, and after a large amount of testimony was taken by the register, he directed an issue to the Court of Common Pleas, No. 1, to try the validity of said will.

The issue came up for trial April 9th 1879, when a verdict was taken by agreement of Daniel Sheetz, who was plaintiff in said issue, and the heirs, against said will, the heirs paying to said Sheetz $15,000 to pay his expenses incurred, and his counsel. After the verdict and judgment, Mary E. Service, a legatee in said will, on behalf of herself and the orphan girls of the city of Philadelphia, and Wm. R. Dickerson in his own behalf, presented to said Court of Common Pleas petitions praying said court to set aside the verdict, which the court did, and ordered a new trial.

On the 4th day of October 1879, Sheetz, by writing filed in court, declined to act, or stand as plaintiff in the case, and asked the court to substitute some other person or persons as plaintiff. The court refused to substitute any other person as plaintiff in said issue.

Sheetz thereupon retained counsel and subpœnaed witnesses, and after a protracted trial, a verdict was rendered in favor of the heirs, and against the pretended will, the same being found to be a forgery.

Letters testamentary were thereupon granted to William

Overington and Edward J. Robinson, the executors named in the true will and testament of Robert Whitaker aforesaid. On the audit of the account of said executors, Sheetz asked an allowance for counsel fees and witness fees expended by him in supporting the alleged will. The auditing judge, ASHMAN, J., disallowed the claim. Sheetz filed exceptions to the adjudication, which were dismissed by the court in an opinion by PENROSE, J., and a decree was entered accordingly. Sheetz thereupon took this appeal, assigning for error the decree of the court.

*Rudolph M. Schick* and *Benjamin Harris Brewster*, for the appellant.—The forged will in which appellant was named as executor, created a charity. It was clearly the duty of the appellant, and to the interest of the community, to endeavor to support the charity. On this ground alone, appellant should be allowed his claim : Attorney-General *v.* Ashburnham, 1 Sim. & Stu. 394; Osborne *v.* Denne, 7 Ves. 424; Moggridge *v.* Thackwell, 7 Ves. 36, 68, 87.

Further than this, it was appellant's duty, as executor, to endeavor to establish the will : Geddis' Appeal, 9 Watts 284 ; Scott's Estate, 9 W. & S. 98. The case of Mumper's Appeal, 3 W. & S. 441, was decided between these cases, and is, therefore, of no weight. What is said on this point in Royer's Appeal, 1 Harris 569, is merely a dictum.

Appellant acted in perfect good faith, and is, therefore, entitled to the amount claimed : Boylan *v.* Meeker, 2 McCarter Ch. 310; Perrine *v.* Applegate, 1 McCarter Ch. 531; Day *v.* Day, 2 Green Ch. 549 ; Marriner *v.* Bateman, 2 Car. L. R. 464.

In this case, the appellant was unwilling to enter upon the litigation, but was forced to do so by the court. Such a state of facts is sufficient to justify an order to pay costs out of the fund: Ashe *v.* Berry, 1 Beatty 255; Rashleigh *v.* Master, 1 Ves. 205 ; Webb *v.* Claverden, 2 Atk. 424.

Similar orders have been made by our own courts : Freeman *v.* Shreve, 5 Norris 138; Fidelity Co.'s Appeal, 38 Leg. Int. 157.

*C. S. Pancoast* (with whom was *John G. Johnson*), for the appellees.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

After a protracted and vigorously conducted contest, the paper writing purporting to be the last will and testament of

[Sheetz's Appeal.]

Robert Whitaker, deceased, was decided to be a forgery, and letters testamentary were granted to the executors of the genuine will. The forged will was produced for probate by W. R. Dickerson, Esq., who had been the friend and legal adviser of the deceased. A caveat was filed, and after a large amount of testimony had been taken, an issue was directed to determine the validity of the alleged will. When the issue came on for trial in the Court of Common Pleas No. 1, an agreement was made between the parties thereto, in pursuance of which a verdict against the will was taken, and the sum of $15,000 was paid to appellant for his expenses, including counsel fees. A petition was afterwards presented by Mary E. Service, a legatee, in behalf of herself and others, and also by W. R. Dickerson, Esq., in his own behalf, praying the court to set aside the verdict. This was done, and the second trial resulted as before, in a verdict for defendants, finding substantially that the Dickerson will was a forgery. Subsequently appellant presented to the Orphans' Court a claim against the estate for expenses of the second trial, viz: $927, witness fees, and a reasonable allowance for counsel fees, neither of which was allowed. The subject of complaint in the several specifications of error is the rejection of this claim.

It may be conceded that appellant, in endeavoring to establish the validity of the disputed paper, acted in good faith, believing it was the genuine will of Mr. Whitaker; but purity of motive and goodness of intention alone will not justify the allowance of such a claim as that made in this case. While the general and almost universal rule is that the defeated party is not entitled to costs, an exceptional case is sometimes presented in which it may be proper for a chancellor to make a reasonable allowance for counsel fees and expenses of the losing party, on the ground that it is a charge which in equity and good conscience the fund ought to bear; but, as remarked by the learned judge of the Orphans' Court, it would be an extraordinary perversion of this doctrine to apply it to one claiming adversely to the will of a testator, and seeking, through the instrumentality of a forged document, to defeat its operation. The allowance of costs in Geddis' Appeal, 9 Watts 284, to a disinterested executor, who in an issue devisavit vel non unsuccessfully defended a will which had been admitted to probate, and under which he was acting, rests on the peculiar circumstances of that case. They differ so widely from those of the present case that the principle on which the former rests is inapplicable to the latter. The ruling in Royer's Appeal, 1 Harris 568, that it is the duty of an executor to sustain the will, is qualified by saying, that under our decisions, his right to do so depends altogether upon whether the litigation is for the benefit of the

[Davis Appeal.]

estate or in promotion of the interest of those eventually entitled to the fund." And the learned judge who delivered the opinion in that case adds: "It is therefore difficult to imagine how, where a pretended will has been repudiated by verdict, the costs of the contest can be cast on those who have succeeded. In Scott's Estate, 9 W. & S. 98, the executor prosecuted the litigation to a successful issue, not for his own benefit, but in the interest of the legatees, who thereby obtained the whole estate. It was there held that he was entitled to credit fees paid counsel for their professional services in establishing the validity of the will and the bequests therein contained. If he had been unsuccessful, his claim to be paid out of the funds of the estate would have rested on different and wholly untenable grounds.

Whatever may be the rule in other states it is sufficient to say that in Pennsylvania the right of an executor to costs in an issue devisavit vel non, even when successful, depends on the question whether the litigation is for the benefit of those entitled to the estate. In no possible view was the effort of appellant to establish the forged will of any benefit to the widow and legatees of the testator in this case: on the contrary, it was fraught with nothing but peril and expense to them.

The question before the Orphan's Court was rightly decided in accordance with the principles recognized in the cases above cited: to which may be added Mumper's Appeal, 3 W. & S. 441, and Rankin's Appeal, 10 W. N. C. 235.

Decree affirmed at the costs of appellant, and appeal dismissed.